IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TRACY HOWARD | : | |
| | : | |
| v. | : | Civil Action No. DKC 24-2929 |
| | : | |
| UNITED AIRLINES, INC. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination and breach of contract case brought against an airline by a passenger who was denied boarding are a motion to dismiss for failure to state a claim filed by United Airlines, Inc. ("United" or "Defendant") (ECF No. 11) and five motions filed by Tracy Howard ("Ms. Howard" or "Plaintiff"): a motion for summary judgment (ECF No. 14), a motion to dismiss all of Defendant's motions (ECF No. 22), a motion for default judgment (ECF No. 24), a motion to strike Defendant's answers for invalid entry of appearance (ECF No. 25), and a motion to strike Defendant's answers for invalid certificate of service. (ECF No. 26). For the following reasons, Defendant's motion to dismiss will be granted and all of Plaintiff's motions will be denied.

## I.    Background

### A.    Factual Background[1]

Plaintiff identifies as an "Aboriginal American" with "a documented mental and physical disability." (ECF No. 1, at 1). Plaintiff intended to travel from Washington Dulles International Airport ("IAD") to South Africa on a United Airlines flight on March 2, 2024, for medical treatment. (*Id.*).

On January 22, 2024, Plaintiff completed a "State of Maryland International Visa Golden Seal 10 finger Fingerprinting Biometrics for international travel." (*Id.*). Plaintiff also obtained a "Consulate issued Emergency Travel Document for her travels to South Africa, in which the biometric report indicates her race being, American Indian." (*Id.*). This type of travel document is issued by the "South African Government . . . to their citizens to enable them to enter and exit South Africa for various emergency reasons." (*Id.*). Plaintiff did not obtain a travel visa because "one can travel to South Africa without a visa for the first 90-days." (*Id.*).

Plaintiff called United's disability phone line forty-eight hours before her flight to confirm the reservation for her service animal. (*Id.* at 3). During the call, Plaintiff identified herself

---

[1] Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff.

as a traveler with a disability. (*Id.*). Plaintiff also obtained service animal documentation in preparation for her flight.[2] (*Id.*).

Plaintiff arrived at the airport at 2:00 p.m. on March 2, 2024, for her 9:00 p.m. flight. (*Id.*). Plaintiff provided a "confirmed reservation, service animal documentation and a Consulate issued American Native Travel Document" to the United agent and attempted to check in, but Plaintiff was told by the agent that she would not be able to do so.[3] (*Id.*).

Plaintiff requested a copy of the service policy the agent was relying on to deny check-in, but Plaintiff never received any such documentation. (*Id.* at 4). Plaintiff then claimed she was being discriminated against based on her disability and asked to speak to a supervisor. (*Id.*). While Plaintiff was sitting down waiting for a supervisor, a United employee ("Jewel") approached Plaintiff and told her to remain seated while Jewel "call[ed] UNITED's partner, TIAMATIC." (*Id.*).

---

[2] South Africa required "animal bloodwork and an animal Certificate of Health signed within ten days of travel," which cost Plaintiff $2,500 to obtain. (ECF No. 1, at 4).

[3] Plaintiff's documentation included "disability documentation, rabies animal health certificate for her service animal, State of Maryland biometric finger printing report and notarized verification identity form." (ECF No. 1, at 5). Plaintiff's notarized identity verification form contained Plaintiff's photograph and right thumb print, six blank visa pages, and a statement that she had "non-us citizen status and American National nationality." (ECF No. 1, at 8).

At 3:00 p.m., a different employee ("Pat") approached Plaintiff and informed Plaintiff that her documentation was insufficient for travel. (*Id.*). United's employees did not provide Plaintiff with a copy of United's service policy and did not provide Plaintiff with a Conflict Resolution Officer ("CRO") during this interaction. (*Id.*).

At 4:00 p.m., a different employee ("Joe") approached Plaintiff. (*Id.* at 5). Joe asked Plaintiff where she was born. (*Id.*). When Plaintiff responded that she was born in America, Joe said that Plaintiff was a United States citizen. (*Id.*).

At 5:25 p.m., Plaintiff received an email from United stating that her flight reservation had been canceled. (*Id.*). At 6:00 p.m., Jewel verbally confirmed the cancelation. Plaintiff requested documentation of the reason her reservation was canceled, but she was not provided with one. (*Id.* at 6). Jewel brought Plaintiff some water when Plaintiff became emotional, and Jewel offered to "put in a $2500 request to reimburse the Plaintiff the cost for a new Veterinary Health Certificate, but the reimbursement was never received." (*Id.*). Plaintiff left the airport at around 8:00 p.m. (*Id.*).

United never provided Plaintiff with a copy of United's service policy or a CRO. (*Id.* at 3-5). Plaintiff states that this entire experience "shocked and traumatized" her. (*Id.*).

4

Plaintiff alleges violations of 14 C.F.R. Part 382 and 42 U.S.C. § 1981, breach of contract, and negligent infliction of emotional distress. (*Id.* at 8-10). Plaintiff also alleges violations of two different treaties: the "International Covenant on Civil and Political Rights 16 December 1966 General Assembly resolution 2200A (XXI)" ("ICCPR"), and the "International Covenant on the Elimination of All Forms of Racial Discrimination 21 December 1965 UN General Assembly resolution 2106 (XX)" ("CERD"). (*Id.* at 7). Plaintiff seeks compensatory damages, punitive damages, and a cease-and-desist order. (*Id.* at 6).

**B.  Procedural Background**

Plaintiff filed a complaint against Defendant on October 8, 2024. (ECF No. 1). On November 15, 2024, Defendant moved to dismiss for failure to state a claim. (ECF No. 11). On December 13, 2024, Plaintiff filed a response in opposition. (ECF No. 13). On December 26, 2024, Defendant filed a reply. (ECF No. 16). On January 10, 2025, Plaintiff filed an "opposition reply memorandum" to Defendant's motion to dismiss, without seeking leave to file a sur-reply. (ECF No. 19).

On December 23, 2024, Plaintiff moved for summary judgment. (ECF No. 14). On January 6, 2025, Defendant opposed Plaintiff's motion. (ECF No. 17). On January 15, 2025, Plaintiff filed a reply. (ECF No. 21).

On March 17, 2025, Plaintiff moved to dismiss Defendant's motions. (ECF No. 22). On March 31, 2025, Defendant opposed Plaintiff's motion to dismiss. (ECF No. 23).

On April 25, 2025, Plaintiff filed three additional motions: a motion for default judgment (ECF No. 24), a motion to strike Defendant's answers for invalid entry of appearance (ECF No. 25), and a motion to strike Defendant's answers for invalid certificate of service. (ECF No. 26). Defendant opposed all three motions on May 9, 2025. (ECF No. 27). Plaintiff replied to each of the three motions on May 21, 2025. (ECF Nos. 28, 29, 30).

## II.    Defendant's Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's complaint, filed *pro se*, is held to "less stringent standards than a formal pleading drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 127 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). The court has an obligation to construe pleadings of self-represented litigants liberally and assume that all factual allegations made in the complaint are true. *Id*. at 93-94.

Nevertheless, Plaintiff still has an obligation to provide enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

6

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Courts are not required to "conjure up questions never squarely presented to them," or to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

## A. Airline Passengers' Bill of Rights and Air Carrier Access Act Claims

Plaintiff purports to state claims pursuant to the Airline Passengers' Bill of Rights, and she asserts that it was amended to add, "Title II Consumer Protections Sec. 210 Private Right of Action for Discrimination Claims." (ECF No. 1, at 7). That section does not appear in the Bill of Rights authorizing act, 49 U.S.C. § 41728, or in the Bill of Rights promulgated by the Department of Transportation. Plaintiff appears to be referencing a portion of a proposed bill: S. 178, which was introduced into the Senate during the 118th Congress on January 31, 2023. *See* S. 178, 118th Cong. § 210 (2023) (proposing an amendment to 49 U.S.C. § 41705 which would provide a private right of action). That legislation was not enacted.[4] Further, the Bill of Rights does not create any rights or protections for consumers; it only

---

[4] Civic Impulse, LLC, *S.178 (118th): Airline Passengers' Bill of Rights*, GovTrack.us, http://www.govtrack.us/congress/bills/118/s178/text/is [https://perma.cc/D3UU-NVLK] (last visited July 24, 2025).

explains the current "protections and responsibilities of covered air carriers, their employees and contractors, and people with disabilities[.]" 49 U.S.C. § 41728(a). No claims can be brought under the Bill of Rights, private or otherwise.

Beyond that, Plaintiff asserts claims directly under 14 C.F.R. Part 382, the regulations designed to carry out the Air Carrier Access Act of 1986, 49 U.S.C. § 41705 ("ACAA").

Defendant moves to dismiss these claims on the ground that there is no private right of action under the ACAA. Plaintiff argues that she has not alleged any violations of the ACAA—only of 14 C.F.R. Part 382—and therefore there is a private right of action.

The only purpose of 14 C.F.R. Part 382 "is to carry out the [ACAA]." 14 C.F.R. § 382.1. Any alleged violations of 14 C.F.R. Part 382 and its various subparts constitute alleged violations of the ACAA. *See Love v. Delta Air Lines*, 310 F.3d 1347, 1355-60 (11th Cir. 2002) (finding there was no private right of action for 14 C.F.R. Part 382 violations, as "attendant regulations" to the ACAA).

For there to be a private right of action, Congress must have intended to create one. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Under the ACAA, there is no expressly provided private right of action. *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 568 (8th Cir. 1989). Although there is no authority in

8

the Fourth Circuit (or this court), several other courts have addressed whether there is an implied private right of action and concluded that there is none. *Stokes v. Sw. Airlines*, 887 F.3d 199, 202 (5th Cir. 2018) ("Since *Sandoval*, every federal court to reach the issue has held that the ACAA's text and structure preclude a private right of action.") (first citing *Love*, 310 F.3d 1347; then citing *Boswell v. Skywest Airlines, Inc.,* 361 F.3d 1263 (10th Cir. 2004); and then citing *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597-98 (2d Cir. 2011)). *See also Segalman v. Sw. Airlines Co.*, 895 F.3d 1219 (9th Cir. 2018); *Seklecki v. Ctr. for Disease Control & Prevention*, 635 F.Supp.3d 15 (D. Mass. 2022); *Miller v. Delta Air Lines, Inc.*, 745 F.Supp.3d 543 (E.D. Mich. 2024)). *But see VanWyngarden v. American West Airlines, Inc.*, 2006 WL 8436778 (S.D. Iowa Oct. 19, 2006) (following pre-*Sandoval* precedent and finding that there is a private right of action under the ACAA).

When analyzing whether there is a private right of action, the court must conduct a "straightforward interpretation of unambiguous statutory text and structure." *Gabelli Glob. Multimedia Tr. Inc. v. W. Inv. LLC*, 700 F.Supp.2d 748, 759 (D.Md. 2010). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval,* 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)). Additionally, "[t]he express provision of one method of

enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290.

The language used in the ACAA focuses on the "air carrier" instead of on the "individuals with disabilities." *See* 49 U.S.C. § 41705(a) ("In providing air transportation, an air carrier . . . may not discriminate against an otherwise qualified individual[.]"). Further, alternative methods of enforcing the ACAA are expressly provided in the statutory text. *See, e.g.*, 49 U.S.C. § 46101(a) (providing an enforcement method in which the Department of Transportation, upon receiving notification of an alleged ACAA violation from an aggrieved passenger, may conduct an investigation and, if necessary, "issue an order to compel compliance"). Accordingly, there is no private right of action under the ACAA, and any claims alleged under 14 C.F.R. Part 382 necessarily fail to state a claim.

Any claims alleged under the Bill of Rights or 38 C.F.R. Part 382 shall therefore be dismissed.

**B.    42 U.S.C. § 1981 Claims**

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]"  42 U.S.C. § 1981(a).  This includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

10

and conditions of the contractual relationship." 42 U.S.C.
§ 1981(b).

Plaintiff alleges that a contract was formed between her and
Defendant when she purchased her airline ticket. She also alleges
that Defendant breached the contract by preventing her from
checking in for her flight, and by violating 14 C.F.R. Part 382.
Assuming there is a contract, Plaintiff's allegations still fail
to provide a plausible inference that Defendant's actions were
motivated by racial animus.

"'To state a cause of action in a § 1981 action' not involving
employment, 'a plaintiff must show: (1) [s]he . . . is a member of
a racial minority; (2) the defendant intended to discriminate on
the basis of race; and (3) the discrimination concerned one or
more of the activities protected by the statute.'" *Jarvis v. Wells
Fargo Bank, N.A.*, No. 21-cv-00687-DLB, 2022 WL 4234835, at *2 (D.Md
Aug. 26, 2022) (quoting *Buchanan v. Consol. Stores Corp.*, 125
F.Supp.2d 730, 734 (D.Md. 2001)). Plaintiff must also show that
"but for race, [she] would not have suffered the loss of [the]
legally protected right" to make and enforce a contract. *Comcast
Corp. v. Nat'l Ass'n of African-American-Owned Media*, 589 U.S.
327, 341 (2020).

Plaintiff alleges that she is a part of a racial minority as
an "Aboriginal American." (ECF No. 1, at 1). Defendant does not
dispute this fact. Plaintiff does not, however, plausibly allege

11

that Defendant intended to discriminate on the basis of race. The only relevant factual allegation that Plaintiff provides in her complaint is United employee Joe's statement to Plaintiff that she is a United States citizen, to which she takes offense. Plaintiff argues that the statement made by Joe "denounce[ed] the Plaintiff's indigenous status." (ECF No. 13, at 3). However, Defendant is correct that the statement made by that employee was not discriminatory; it was simply a legally and factually true statement.[5] (ECF No. 11-1, at 20). There is no evidence provided by Plaintiff to suggest that Joe's statement was related to Defendant's refusal to let Plaintiff check in for her flight.

There are also no factual allegations to suggest that Defendant's actions would not have occurred but for Plaintiff's racial status. Plaintiff does not specifically mention any similarly situated non-minority passengers who were allowed to travel after being told that their documentation was insufficient for travel. Plaintiff's current "allegation indicat[es] only that she was treated differently, not that she was treated differently *because* of her race." *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 400 (4th Cir. 2021).

---

[5] Under 8 U.S.C. § 1401, "a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe" is a United States citizen.

Plaintiff argues in her opposition and in her motion for summary judgment that her travel documentation was sufficient to travel internationally, and that she did not need an official United States passport. (ECF No. 1-4; ECF No. 13, at 11; ECF No. 14, at 1-2). Plaintiff thus argues that the only reason for her being denied the ability to check in for her flight was due to her disability and her race.

As mentioned in Plaintiff's complaint, however, United employees believed that Plaintiff's travel documentation was insufficient. Regardless of whether the United employees were correct, the lack of a passport is a plausible explanation for Defendant's actions other than race. *See Daulatzai v. Maryland*, 606 F.Supp.3d 252, 273 (D.Md. 2022), *aff'd*, 97 F.4th 166 (4th Cir. 2024) (finding that airline employees had a plausible reason for denying services other than race—a deadly dog allergy—even if the reason was incorrect).

Taking all of Plaintiff's factual allegations as true and excluding her conclusory assertions that Defendant's actions were taken because of Plaintiff's race, the allegations do not provide a plausible inference that Plaintiff was discriminated against by Defendant on the basis of race. Therefore, any claims alleged under 42 U.S.C. § 1981 shall be dismissed.

C.    **Common Law Claims**

Plaintiff alleges breach of contract and negligent infliction of emotional distress.  Defendant argues that these common law claims should be dismissed because they are preempted by the Airline Deregulation Act of 1978 ("ADA").

Plaintiff's core allegation is that Defendant breached a contract by failing to comply with 14 C.F.R. Part 382 and by denying Plaintiff the ability to check into her flight.  Plaintiff also raises claims of negligent infliction of emotional distress. Both these common law claims are preempted under the ADA.  In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 391 (1992), the Supreme Court held that the ADA, then codified as 49 U.S.C.App. § 1301, expressly preempted state enforcement of its own guidelines on fare advertising.  Later, the Court referred to *Morales* and noted that the ADA "confers on private entities (*i.e.*, covered carriers) a federal right to engage in certain conduct subject only to certain (federal) constraints." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478-79 (2018).  Any common law claims that relate to the price, route, or service of an air carrier are preempted.  *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 280-81 (2014).

"To determine whether a claim has a connection with, or reference to an airline's prices, routes, or services, [the court] must look at the facts underlying the specific claim." *Cowan Sys., LLC v. Ferguson*, No. 12-cv-0984-ELH, 2012 WL 3025131, at *4 (D.Md.

14

July 23, 2012) (quoting *Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998)).  The ability of a passenger to board a flight is directly related to the services provided by an airline.  *Smith*, 134 F.3d at 259.  Accordingly, all claims based on Defendant's refusal to check Plaintiff in for her flight are preempted.

### D.  Treaties

Plaintiff alleges that Defendant violated two different treaties—the ICCPR and the CERD—by refusing to let her check in for her flight.  Defendant moves to dismiss on the ground that there is no private right of action under either treaty.

"International treaties . . . are not presumed to create rights that are privately enforceable." *Wu Tien Li-Shou v. United States*, 777 F.3d 175, 185 (4th Cir. 2015) (quoting *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992)).  "[W]hile treaties 'may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be "self-executing" and is ratified on these terms.'" *Medellin v. Texas*, 552 U.S. 491, 505 (2008) (quoting *Igartua-De La Rosa* v. *United States*, 417 F.3d 145, 150 (1st Cir. 2005).  Neither of these exceptions apply to the ICCPR or the CERD.

Further, the Supreme Court of the United States has established explicitly that there is no private right of action under the ICCPR.  *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).

All jurisdictions that have analyzed the CERD have also concluded there is no private right of action. *See, e.g.*, *Johnson v. Quander*, 370 F.Supp.2d 79, 101-102 (D.D.C. 2005) (finding there is no private right of action under CERD), *aff'd*, 440 F.3d 489 (D.C. Cir. 2006), *cert. denied*, 549 U.S. 945 (2006). Accordingly, all claims alleged under the ICCPR or the CERD shall be dismissed.

**E.    14 C.F.R. §§ 259.5 and 259.7 Claims**

Plaintiff, in her opposition and in her motion for summary judgment, alleges new claims under 14 C.F.R. §§ 259.5 and 259.7. (ECF No. 13, at 2; ECF No. 19, at 2-3). However, Plaintiff cannot raise new claims without first moving to amend her complaint. *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F.App'x 556, 563-64 (4th Cir. 2008). Thus, Plaintiff's claims that Defendant violated 14 C.F.R. §§ 259.5 and 259.7 are not properly before the court and must be dismissed.

Even if the court was to consider Plaintiff's new claims, there is no private right of action under 14 C.F.R. §§ 259.5 or 259.7. "To create a private right of action, Congress must 'speak with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private *right* but also a private *remedy*.'" *Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 444 (4th Cir. 2014) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (internal citations omitted)). 14 C.F.R. Part 259 provides no enforcement mechanism for individual

16

passengers, thus offering no evidence that Congress intended to create a private right of action. Any claims that could be alleged under 14 C.F.R. §§ 259.5 and 259.7 would therefore be dismissed.

## III. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment, arguing that there are no material facts in dispute and that she therefore successfully pleads all claims alleged in her complaint. (ECF No. 14, at 1–2). Defendant counters that Plaintiff is not entitled to summary judgment because the complaint fails to state a claim, and because Plaintiff fails to comply with Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 17, at 2–3). The court has considered Plaintiff's summary judgment arguments when evaluating Defendant's motion to dismiss. Given that all of Plaintiff's claims are being dismissed, summary judgment in Plaintiff's favor is obviously inappropriate, and the motion is denied.

## IV. Plaintiff's Challenges to Defendant's Attorney

Plaintiff moved to strike Defendant's motion to dismiss (ECF No. 11), Defendant's reply to Plaintiff's opposition (ECF No. 16), and Defendant's opposition to Plaintiff's motion for summary judgment (ECF No. 17) for "Improper Notice of Appearance, Insufficient Defense, Invalid Filing and invalid response." (ECF Nos. 22, 25, 26). Plaintiff argues that, because Defendant's attorney never filed a valid entry of appearance, all motions, replies, oppositions, and certificates of service filed by

17

Defendant's attorney are invalid.  According to Plaintiff, Defendant's entry of appearance was invalid because it states that it is for a "Civil Case" and Plaintiff's case is a "Contract Case." (ECF No. 25).  There is nothing wrong with the entry of appearance form.

Plaintiff also argues that Defendant's motion to dismiss, filed by Defendant's attorney, is "inadmissible" because "it[']s merely [the attorney's] personal opinion."  (ECF No. 13, at 1). This argument is baseless.  Documents filed by an attorney do not constitute that attorney's opinion.  Defendant, as a corporation, is required to be represented by counsel.  Local Rule 101.1(a) ("All parties other than individuals must be represented by counsel.").  Any motions must be filed by counsel on behalf of Defendant.  Local Rule 102.6 ("[N]o document shall be accepted for filing by a party represented by counsel unless it is filed by counsel.").

Accordingly, Plaintiff's motions to dismiss all Defendant's motions, to strike Defendant's answers for invalid entry of appearance, and to strike Defendant's answers for invalid certificate of service are denied.

## V.    Plaintiff's Motion for Default Judgment

Pursuant to Rule 55, the court may grant a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

is shown by affidavit or otherwise[.]" Fed.R.Civ.P. 55(a). The moving party must also show that the "adversary process has been halted because of [the] unresponsive party." *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005). Plaintiff, as the moving party, has failed to satisfy this standard.

Plaintiff attempts to show that the adversary process has been halted by Defendant's failure to respond to her complaint. Plaintiff argues that, because documents filed by Defendant's attorney are invalid, Defendant has been unresponsive. As discussed above, however, these arguments are baseless.

Plaintiff also argues that the court should strike documents filed by Defendant as "insufficient" and "immaterial" pursuant to Rule 12(f), making Defendant unresponsive. (ECF No. 29, at 1). Rule 12(f) states, in relevant part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Plaintiff's argument fails for two reasons.

First, Rule 12(f) motions only apply to pleadings. Rule 7(a) defines pleadings as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed.R.Civ.P. 7(a). None of Defendant's filings are pleadings within the meaning of

Rule 7(a) and are therefore not subject to Rule 12(f). *See CX Reinsurance Co. Ltd. v. Johnson*, 325 F.R.D. 132, 135 (D.Md. 2018) ("A motion for summary judgment is not a pleading and therefore is not susceptible to a motion to strike.").

Second, even if Defendant's filings could be treated as pleadings, "Rule 12(f) motions generally will be not granted unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party." *Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 117 (D.Md. 2020). Plaintiff has not alleged any prejudice resulting from Defendant's papers, nor has she explained how these papers are "immaterial" to the case. Accordingly, Plaintiff's motion for default judgment is denied.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted. Plaintiff's motions for summary judgment, to dismiss all Defendant's motions, for default judgment, to strike Defendant's answers for invalid entry of appearance, and to strike Defendant's answers for invalid certificate of service will be denied. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
